IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

SmartLinx Solutions, LLC,                    )
                                             )
                    Plaintiff,               )
                                             )        Civil Action No. 2:21-cv-711-BHH
v.                                           )
                                             )        **Opinion and Order**
Vitzeslav Zeif,                              )
                                             )
                    Defendant.               )
_____ )

This matter is before the Court upon the following motions: (1) Defendant Vitzeslav

Zeif's ("Zeif") motion for partial summary judgment as to his defamation counterclaim

against Plaintiff SmartLinx Solutions, LLC ("SmartLinx") (count two of Zeif's amended

answer and counterclaims, *see* ECF No. 35) (ECF No. 198); Defendant Zeif's motion for

partial summary judgment as to his counterclaims for tortious interference with prospective

contractual arrangement and conversion against SmartLinx (counts three and four of Zeif's

amended answer and counterclaims, respectively, *see* ECF No. 35) (ECF No. 206);

SmartLinx's motion for summary judgment as to Zeif's amended counterclaims for

defamation, tortious interference with prospective contractual arrangement, and conversion

(ECF No. 214); and Zeif's motion for determination of jurisdictional issues in advance of trial

(ECF No. 231).

All of these motions have been fully briefed and are ripe for review.  For the reasons

set forth herein, the Court denies Zeif's motions for partial summary judgment (ECF Nos.

198, 206); the Court grants in part and denies in part SmartLinx's motion for summary

judgment (ECF No. 214); and the Court grants Zeif's motion for determination of

jurisdictional issues in advance of trial (ECF No. 231) insofar as the Court outlines herein the reasons supporting the Court's continuing exercise of supplemental jurisdiction.

## **BACKGROUND**

In either 2006 or 2008,[1] Zeif began working for SmartLinx as an at-will employee, and SmartLinx continuously employed him until February 28, 2021.  (ECF No. 35 at 20, ¶ 4.)   According to SmartLinx's verified amended complaint ("amended complaint"), SmartLinx is a limited liability company that provides workforce management and scheduling solutions in the long-term care and nursing marketplace.  (ECF No. 24 ¶ 4.) SmartLinx further asserts that it "distinguishes itself from other workforce management and placement companies through its scheduling products and software-Time and Attendance (TA) and Schedule Optimizer (SO), with the latest scheduling version including a feature called 'Ideal Schedule.'" (*Id*. ¶ 11.)  SmartLinx claims that this scheduling technology provides its competitive edge in the marketplace and generates more than half of its annual revenue.  (*Id*. ¶ 13.)

In his amended answer and counterclaims ("amended counterclaims"), Zeif asserts that "SmartLinx's business is the creation and sale of enterprise software and connected devices for businesses involved in the health care industry, primarily long-term care and senior living facilities."  (ECF no. 35 at 20, ¶ 5.)

In April of 2009, Zeif signed a non-disclosure and non-compete agreement

---

[1] In its verified amended complaint, SmartLinx asserts that Zeif was hired in 2008.  (ECF No. 24 ¶ 19.) In his amended answer and counterclaims, Zeif "admits that he was hired by SmartLinx in March, 2006," but in his motion for partial summary judgment, he repeats the verified amended complaint's claim that he was hired by SmartLinx in 2008.  (*Compare* ECF No. 35 at 4, ¶ 19 *and* ECF No. 198 at 2.)  Whether Zeif began working for SmartLinx in 2006 or 2008 has no bearing on the ultimate issues before the Court.

("Agreement").[2]  (ECF No. 24-1; ECF No. 24 ¶ 29; ECF No. 35 at 6, ¶ 29.)  In September 2009, Zeif was promoted to Director of Support and Implementation.  (ECF No. 24 ¶ 30; ECF No. 35 at 6, ¶ 30.)  Zeif also was promoted in 2016, and he asserts that after he began working with Project Management Team, he was given access to SmartLinx's source code, which is only accessible on a confidential and secured basis to those authorized by management.  (ECF No. 35 at 5, ¶ 21; ECF No. 24 ¶ 23.)  During his employment with the company, SmartLinx issued Zeif, among other things: (1) a Samsung Galaxy Note 9; (2) an iPad; and (3) a Dell and Lenovo laptop for use in connection with his employment.  (ECF No. 24 ¶ 20; ECF No. 35 at 5 ¶ 20.)

In early 2020, Zeif was promoted to Director of Product Management, a senior level position that reported directly to the Vice President of Product Management.  (ECF No. 24 ¶ 24; ECF No. 35 at 5, ¶ 24.)  As part of his responsibilities, Zeif had access to the SmartLinx GitHub repository.  (ECF No. 24 ¶ 26; ECF No. 35 at 5, ¶ 26.)  Zeif also admits that during the course of his employment, one or more drafts of an employee handbook were made available to him, and he asserts that he voluntarily complied with the terms of the handbook.  (ECF No. 35 at 6, ¶ 33.)

According to Zeif, an employment recruiter contacted him early in 2021 regarding

---

[2] The Agreement provides in pertinent part:

I will maintain appropriate personal and equipment security precautions in order to protect and maintain the confidential nature of all such materials.  I specifically acknowledge the proprietary and confidential status of all customer lists, customer data, requirements and development documentation, and source or object code supplies in the course of my job execution.

(ECF No. 24-1 at 2.)  It further provides: "I also commit that for a period of two (2) years beyond the conclusion of my work with SmartLinx Solutions, LLC I will not be employed either as an employee, contractor, or consultant with any entity that is directly competitive with SmartLinx Solutions, LLC."  (*Id.*)

a position with IntelyCare, Inc. ("IntelyCare"), a Massachusetts corporation that provides health care facilities with temporary nursing personnel to supplement permanent staff needs, and Zeif admits he began having discussions with IntelyCare concerning the nature of the position. (ECF No. 35 at 21, ¶ 10.) Zeif's calendar entries show that from January 20, 2021, through February 8, 2021, Zeif engaged in calls with IntelyCare management. (ECF No. 24-5.)

On February 5, 2021, IntelyCare extended an offer of employment to Zeif for the "full-time position of Senior Director of Product Management," with a start date of "3/29/21, or another mutually acceptable date." (ECF No. 218 at 4-5.) On February 12, 2021, Zeif gave notice to Jim Pirraglia ("Pirraglia"), Vice President of Product at SmartLinx, that he was resigning from his position at SmartLinx, effective March 26, 2021. (ECF No. 35 at 22, ¶¶ 15, 38; ECF No. 24 ¶ 38.) On February 14, 2021, Zeif informed Marina Aslanyan ("Aslanyan"), the Chief Executive Officer at Smartlinx, that he was resigning and intended to go work for IntelyCare.[3] (ECF No. 24 ¶ 39; ECF No. 35 at 7, ¶ 39.) Zeif informed SmartLinx that the job with IntelyCare was "too good to pass up" and that IntelyCare wanted him "to come in and build a light version of a scheduling solution." (ECF No. 24 ¶ 40; ECF No. 35 at 7, ¶ 40.) Aslanyan reminded Zeif about the non-disclosure and non-compete Agreement, but Zeif asserted he did not recall signing such a document, and he believed the Agreement was not enforceable. (ECF No. 24 ¶ 41; ECF No. 35 at 7, ¶ 41; ECF No. 206 at 5.)

---

[3] In his motion for partial summary judgment as to counts three and four of his amended counterclaims, Zeif asserts that he advised Aslanyan of this on February 12, 2021; whether this occurred on February 12 or February 14 has no bearing on the ultimate issues before the Court. (ECF No. 206 at 5; ECF No. 206-2 at 1.)

After Zeif informed SmartLinx of his intention to join IntelyCare, SmartLinx performed an internal forensic audit of its systems and information. (ECF No. 24 ¶ 52.) According to SmartLinx, it learned that Zeif had breached the confidentiality provisions of the Agreement by surreptitiously installing software to download the SmartLinx source code and by accessing the SmartLinx GitHub repository to download approximately 50,000 files containing SmartLinx proprietary information onto his OneDrive cloud system and his computer's local C: drive. (ECF No. 24 ¶ 53; ECF No. 214-3 at 5.) Also, SmartLinx asserts that Zeif had no authorization to engage in this activity and that none of the other developers engaged in the same behavior. (*Id.* ¶ 54.) SmartLinx further asserts that it expressly instructed Zeif to discontinue working on the source code. (*Id.* ¶ 56.) According to SmartLinx, Zeif performed a mass download of computer files from the GitHub repository after he began the interview process with IntelyCare, and he continued to download files even on the same days when he gave verbal notice and written notice of his resignation, February 14 and 24, 2021, respectively. (*Id.* ¶¶ 57, 58.) In addition, SmartLinx asserts that an audit of the internet searches performed by Zeif after giving notice of his resignation revealed two results that indicated his intent to misappropriate SmartLinx source code, namely, (1) an article titled "Who Owns the Code?" and (2) a search to determine how to use the remote desktop application to connect a Windows 10 personal computer, which would have enabled Zeif to remotely access SmartLinx systems from a separate, nonwork computer. (*See* ECF No. 24-6.)

On the other hand, Zeif asserts that he did not undertake any unauthorized or nefarious activities, and he claims that SmartLinx's internal audit did not show any activity that was not part of the normal performance of his job duties. (ECF No. 35 at 8, ¶ 52.)

5

Additionally, Zeif contends that SmartLinx authorized the software download to the Dell computer that was assigned to him, and that all persons with similar authorization to access SmartLinx source code in the GitHub repository had the same type of software and downloaded source code in the same way.  (*Id.* ¶ 53.)  Zeif acknowledges that he downloaded SmartLinx source code, but he asserts he only did so as he was authorized to do and as was necessary for his work in repairing software "bugs."  (*Id.*)  According to Zeif, he had a duty to make improvements to the software, and SmartLinx assigned 348 software "bugs" to him for resolution in the fourteen months prior to his termination.  (*Id.* ¶ 55.)  Zeif denies that he was instructed to discontinue work on source code bugs or that any downloads of computer files had anything to do with his interview with IntelyCare.  (*Id.* ¶¶ 56, 57.)  At his deposition, however, he admitted that Aslanyan might have told him to stop working on bugs.  (ECF No. 214-1 at 4.)  More specifically, Zeif testified: "it was everybody's intention, including Marina, for me not to work on bugs."  (*Id.*)

On February 15, 2021, Zeif informed IntelyCare via email that "a non-compete that [he] signed some 12 years ago has been brought to [his] attention."  (ECF No. 218 at 3.) He stated: "I honestly had no recollection of this and I am not sure how applicable it would be in this situation."  (*Id.*)  He also stated that he is "still more interested in [IntelyCare's] offer and would like to accept."  (*Id.*)

On February 23, 2021, Zeif accepted IntelyCare's offer.  (ECF No. 206 at 5; ECF No. 218 at 4.)  On February 24, 2021, Zeif formally resigned his position at SmartLinx, to be effective at the end of March 2021.  (ECF No. 206-2 at 1.)

On February 26, 2021, SmartLinx deposited $11,372.43 into Zeif's checking account, representing the net bonus for work done in 2020 after deducting $9,137.57 for

taxes.  (ECF No. 206-2 at 2.)  Zeif's bonus for work done in 2020 was payable at the

discretion of SmartLinx.  (ECF No. 215-6 (providing that bonuses are "payable at the

discretion of the employer"); ECF No. 215-1 at 12 (including the statement by Zeif that he

was "not aware of anything that guarantees" his bonus).)

On February 28, 2021, SmartLinx sent a termination letter to Zeif ("termination

letter"), terminating him for cause and directing him to immediately discontinue utilizing all

electronic devices provided to him by SmartLinx during the course of his employment.

(ECF No. 24-7 at 3.)  The termination letter states in pertinent part:

> The Company is taking this action **effective immediately** based upon acts
> and omissions made by you with the apparent intention to misappropriate
> Company trade secrets, including the Company's source code, and other
> proprietary and intellectual property, and ultimately to convert those trade
> secrets and intellectual property for your own personal use or for that of your
> prospective employer Intelycare, Inc. ("Intelycare"), a direct competitor of
> SmartLinx. Your conduct is violative of a panoply of federal and New Jersey
> laws, including without limitations the Federal Defend Trade Secrets Act,
> codified at 18 U.S.C. § 1836, and the Computer Fraud And Abuse Act,
> codified at 18 U.S.C. § 1030)[], as well as a violation of the Non-Disclosure
> and Non-Competition Agreement ("NDA") executed by you on behalf of the
> Company and attached to this letter for your reference.
>
> The Company has become aware that both prior to and following your
> announced resignation on February 12, 2021, you downloaded tens of
> thousands of computer files from the Company's cloud-based server system,
> including the source code relating to the scheduling software representing a
> key aspect of the Company's product and service offerings.

(ECF No. 24-7 at 2.)  The letter also includes a formal written demand to initiate a litigation

hold under federal and New Jersey electronic discovery rules.  (*Id.* at 3.)

Also on February 28, 2021, SmartLinx sent a letter to three individuals at Intelycare[4]

---

[4] The IntelyCare letter was sent to David Coppins, the Chief Executive Officer of IntelyCare at the
time; Matt McGinty, the Chief Revenue Officer at IntelyCare; and John Shagoury, the Chief Operating Officer
of IntelyCare.  (ECF No. 198-4.)

("IntelyCare letter"), advising them of what SmartLinx viewed to be Zeif's illegal conduct and demanding that Intelycare cease and desist all efforts to employ Zeif.  (ECF No. 24-8.) This letter included a copy of the termination letter that was sent to Zeif (outlined above), as well as a copy of the non-disclosure and non-competition Agreement.  The letter states that "Zeif has downloaded tens of thousands of computer files from the Company's cloud-based server system, including the source code relating to the scheduling software representing a key aspect of the Company's product and service offerings [ ] with the intent to convert these trade secrets for the benefit of his prospective employment with your company, Intelycare, Inc., a direct competitor of SmartLinx."  (*Id*. at 2.)  The letter further provides that Zeif's actions violated federal and New Jersey laws, and the letter demands that IntelyCare: (1) cease and desist all efforts to employ Mr. Zeif; (2) provide SmartLinx with a list of any SmartLinx Proprietary Information provided to Intelycare by Zeif; (3) return all SmartLinx Proprietary Information in its possession; and (4) confirm in writing that it complied with the letter. (*Id*. at 3.)  As with the termination letter sent to Zeif, the IntelyCare letter states that it constitutes a formal written demand to initiate a litigation hold and provides that SmartLinx is prepared to take any necessary legal action.  (*Id*.)

On March 1, 2021, SmartLinx received correspondence from counsel for Zeif, John E. North, responding to the allegations in the termination letter and stating:

> If you or SmartLinx, its agents, or representatives publish these statements to our client's prospective employer or any other entity or person, including other employees of SmartLinx, asserting that our client was "fired for cause", rather than resigning to take another position, has engaged in criminal conduct surrounding this matter, or otherwise acted in a manner not in keeping with the law or his professional responsibilities, we will bring an action seeking damages for defamation.  Should you or your client cause Mr. Zeif's employer to withdraw its offer to him, we will also seek damages for tortious interference with a business relationship.   Both punitive and

8

exemplary damages are available for those claims under applicable law.

Second, the bonus that our client was paid in February will not be returned. That bonus was attributable to his work in 2020, and you have cited no factual or legal basis for your demand that it be returned. You should note that it was paid after our client's resignation. Your client knows that all of the bonuses paid in February, 2021, related to 2020 work and the claim for a refund of this compensation is another example of SmartLinx making a groundless claim against my client.

(ECF No. 24-9 at 5-6.)

On March 2, 2021, SmartLinx withdrew the $11,372.43 that it had deposited into Zeif's checking account in February. (ECF No. 206-2; ECF No. 206-3 at 9; ECF No. 214-9 at 2.) Zeif subsequently obtained a refund from the bank of the amount withdrawn from his account. (ECF No. 206-2 at 2.)

On March 3, 2021, Zeif filed suit against SmartLinx in the Charleston County Court of Common Pleas. *Zeif v. SmartLinx Solutions, LLC*, Case No. 2021-cp-09-1001017 (ECF No. 213-1.) Zeif's state court complaint included the following causes of action: (1) declaratory judgment, requesting a declaration that the Agreement was invalid and unenforceable and a declaration that IntelyCare is not directly competitive with SmartLinx; (2) defamation based on statements in the termination letter and the IntelyCare letter; and (3) tortious interference, asserting that SmartLinx was "aware of the agreement for employment between Plaintiff and IntelyCare" and intended to "interfere with Plaintiff's employment agreement and with the intent of inducing IntelyCare to terminate its agreement of employment with Plaintiff." (ECF No. 213-1 at 7-8.)

On March 3, 2021, Zeif communicated via email with Rachel Schiff ("Schiff") at IntelyCare regarding the state court complaint he filed against SmartLinx, and on March 5, Zeif indicated that he "received his on-boarding package and will start filling it out today."

(ECF No. 218 at 8.)  Rachel indicated in response that she would order Zeif's computer but not send it "until this is sorted out."  (*Id.*)

On March 11, 2021, SmartLinx filed this action in this Court, asserting federal question jurisdiction and alleging claims against Zeif for: (1) violation of the trade secret misappropriation under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1839; (2) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (3) trade secret misappropriation under the South Carolina Trade Secrets Act, S.C. Code Ann. § 39-8-20; (4) breach of contract; (5) misappropriation; (6) conversion; and (7) breach of fiduciary duty and duty of loyalty.  (ECF No. 1 at 17-23.)  SmartLinx also filed an emergency motion for temporary restraining order and preliminary injunction.  (ECF No. 3.)  Zeif filed a response in opposition to the motion on March 22, 2021; SmartLinx filed a reply on March 28, 2021; and Zeif filed a sur-reply and affidavit on March 31, 2021.  (ECF Nos. 11, 13, 18, 19.)

On April 2, 2021, SmartLinx filed a partial answer to Zeif's state court complaint, responding to the allegations in the complaint pertaining to the declaratory judgment claim. SmartLinx also filed a motion to dismiss Zeif's defamation and tortious interference claims, and SmartLinx filed crossclaims against Zeif for (1) violation of the trade secret misappropriation under the Federal Defend Trade Secrets Act; (2) violation of the Computer Fraud and Abuse Act; (3) trade secret misappropriation under the South Carolina Trade Secrets Act; (4) breach of contract; (5) misappropriation; (6) conversion; (7) breach of fiduciary duty and duty of loyalty.  (*See* ECF No. 213-10 at 2-33.)  In its partial answer, SmartLinx asserted a number of affirmative defenses to defamation, including truth, absolute privilege, and qualified privilege.  (*Id*. at 10; ECF No. 214-8 at 10.)

In a text order dated April 5, 2021, this Court denied SmartLinx's motion for

10

temporary restraining order and preliminary injunction, finding that SmartLinx failed to make a clear showing of all of the factors necessary for relief under *Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).  (ECF No. 23.)  The same day, SmartLinx filed its amended complaint against Zeif, raising the same claims, and a response to Zeif's motion for summary judgment.[5]  (ECF No. 24.)

On April 7, 2021, Schiff informed Zeif that, given this Court's ruling denying the motion for temporary restraining order and preliminary injunction, Zeif could start work with IntelyCare "tomorrow, Thursday April 8," and Schiff indicated that "[a]ll terms and conditions of your offer letter dated February 5, 2021 will still apply."  (ECF No. 218 at 9.)

On April 23, 2021, Zeif filed a motion to dismiss SmartLinx's amended complaint in this action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "and conditional motion for summary judgment pursuant to Rule 56."  (ECF No. 28 at 1.) Specifically, Zeif requested dismissal of counts one, two, three, six, seven, and eight of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and conditional summary judgment as to count five.  SmartLinx filed a response in opposition, and Zeif filed a reply.  (ECF Nos. 29, 30.)  On March 29, 2022, this Court entered an opinion and order denying Zeif's motion.  (ECF No. 31.)  Following the Court's order, SmartLinx and Zeif agreed to dismiss Zeif's state court complaint and consolidate the action before this Court.  (ECF No. 213 at 4, n.4; ECF No. 213-2.)

On April 12, 2022, Zeif filed an answer to the amended complaint as well as

---

[5] Zeif had previously filed a motion for summary judgment and motion to dismiss on March 22, 2021. (ECF No. 12.)  After SmartLinx filed its amended complaint, however, the Court terminated the motion.  (ECF No. 27.)

counterclaims against SmartLinx and a third-party complaint against Aslanyan. (ECF No. 32.) Zeif asserted jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367 and alleged the following claims: (1) declaratory judgment that the parties' Agreement is invalid and unenforceable; (2) defamation against SmartLinx and Aslanyan; (3) tortious interference with prospective contractual arrangement against SmartLinx and Aslanyan; and (4) conversion against SmartLinx and Aslanyan. (*Id.*)

On April 20, 2022, Zeif filed an amended answer to amended complaint and counterclaims (the operative pleading at this time), asserting the same counterclaims against SmartLinx but dropping his third-party complaint against Aslanyan. (ECF No. 35.)

SmartLinx filed a motion to partially dismiss Zeif's counterclaims on May 4, 2022, and an answer to Zeif's counterclaims. (ECF Nos. 36, 37.) In its answer, SmartLinx states: "Plaintiff files this Answer subject to the defenses set forth in the Motion for Partial Dismissal and is not waiving, and expressly reserves, all defenses and all additional rights set forth therein." (ECF N. 37 at 1.) In its memorandum in support of its motion for partial dismissal, SmartLinx specifically asserts that the letters sent by SmartLinx are subject to absolute privilege and cannot serve as the basis for a defamation claims. (ECF No. 36-1 at 12-21.) Zeif filed a response to SmartLinx's motion, and SmartLinx filed a reply. (ECF Nos. 38, 44.)

On July 11, 2022, Zeif filed a motion for partial summary judgment as to counts two and five of SmartLinx's amended complaint, and as to his counterclaim for declaratory judgment. (ECF No. 45.) SmartLinx filed a response in opposition, and Zeif filed a reply. (ECF Nos. 48, 49.)

The parties subsequently filed discovery-related motions, which the undersigned

12

referred to United States Magistrate Judge Mary Gordon Baker for resolution. (*See* ECF Nos. 50, 53, 55-56, 60-64, 68-79, 81, 84, 93, 95-96, 99-102, 130-141, 145-159.) Zeif appealed certain of the Magistrate Judge's discovery-related decisions, but the undersigned affirmed the Magistrate Judge's orders. (*See* ECF Nos. 98, 105-106, 114, 127.)

On November 11, 2022, Zeif filed another motion for summary judgment as to all counts of SmartLinx's amended complaint. (ECF No. 85.) SmartLinx filed a response in opposition, and Zeif filed a reply. (ECF Nos. 97, 112, 121.)

On March 28, 2023, the Court entered the following text orders:

(1) The Court entered a text order denying SmartLinx's motion for partial dismissal of Zeif's counterclaims (ECF No. 36), explaining that Zeif's defamation counterclaim included sufficient factual matter to state a plausible claim and that SmartLinx could raise its arguments regarding absolute privilege at the summary judgment stage. The Court further explained that Defendant's third counterclaim for tortious interference with prospective contractual relations included sufficient factual allegations to survive SmartLinx's Rule 12(b)(6) motion, but that SmartLinx could raise its arguments again at summary judgment. (ECF No. 124.)

(2) The Court entered a text order granting in part and denying in part Zeif's motion for partial summary judgment (ECF No. 45), granting the motion in part by finding that Zeif was entitled to summary judgment as to SmartLinx's breach of contract claim and Zeif's declaratory judgment counterclaim "only to the extent that these claims pertain to the non-competition provision of the parties' agreement," and denying the remainder of Zeif's motion. (ECF No. 125.) The Court explained that Zeif was not entitled to summary

judgment on SmartLinx's breach of contract claim or his declaratory judgment counterclaim to the extent the claims pertain to the non-disclosure provision of the Agreement. (*Id.*)

(3) The Court entered a text order denying without prejudice Zeif's motion for summary judgment (ECF No. 85), explaining that Zeif failed to reference the appropriate standard or articulate how his arguments satisfy Rule 56 of the Federal Rules of Civil Procedure and remarking that Zeif was essentially asking the Court to "weigh the evidence and make credibility determinations, which is not appropriate under the applicable summary judgment standard." (ECF No. 126.) The Court also noted that Zeif's motion was premature, as the parties were still engaged in various discovery disputes. (*Id.*)

(4) The Court entered a text order affirming Magistrate Judge Baker's discovery orders and overruling Zeif's appeals of those orders. (ECF No. 127.)

Importantly, in connection with her rulings on the parties' discovery-related motions, the Magistrate Judge appointed a neutral, third-party expert witness to facilitate the inspection of cloud storage accounts within Zeif's control. (*See* ECF Nos. 146, 151, 155, 159.) The undersigned thereafter ordered the parties to comply with the Magistrate Judge's Order and Protocol for Forensic Inspection and to complete the Protocol by December 4, 2023. (ECF No. 166.) The forensic report ("the Akerman Report") was provided to the Court on November 29, 2023. (ECF No. 168.)

On December 1, 2023, SmartLinx filed a motion to voluntarily dismiss its claims in the amended complaint without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. (ECF No. 169.) In its motion, SmartLinx explained that although it had developed ample circumstantial evidence to warrant the filing and maintenance of its claims, because the Akerman Report did not find files containing SmartLinx source code,

14

it "would like to voluntarily dismiss its claims without prejudice in lieu of continuing to litigate a case based on circumstantial evidence." (*Id.* at 1.)

Zeif filed a response opposing the motion, asserting that he would be unfairly prejudiced because a Rule 41 dismissal is not an adjudication on the merits, which Zeif asserted is a condition precedent to filing (1) Zeif's malicious prosecution claim and (2) Zeif's claim under 18 U.S.C. § 1836(b)(3)(D) for an award of attorney's fees to a "prevailing party" if the claim of misappropriation was made in bad faith. (ECF No. 170.) SmartLinx filed a reply in support of its motion on December 11, 2023. (ECF No. 174.)

On January 4, 2024, after considering the parties' arguments and the applicable law, the Court entered an order granting SmartLinx's motion to voluntarily dismiss its claims against Zeif without prejudice, explaining that voluntary dismissal would not unfairly or substantially prejudice Zeif:

> As an initial matter, the Court notes that Defendant's counterclaims against Plaintiff can remain pending for independent adjudication, and all of the work performed in pursuit of Defendant's counterclaims will continue to be useful.
>
> Next, the Court notes that while this action has been pending for nearly three years, it has involved many difficult and contentious discovery disputes, and any blame for discovery-related delay would appear to fall equally on both sides as they have not been eager to resolve their disputes amicably.
>
> Additionally, although it is clear that the parties have both expended great time and effort to prepare for trial, Plaintiff promptly requested dismissal in response to the Akerman Report, and the Court finds Plaintiff's explanation of the need for dismissal sufficient. Contrary to Defendant's assertion that "SmartLinx acknowledges it does not have the evidence to proceed," SmartLinx in fact asserts that it has ample circumstantial evidence to warrant the filing and maintenance of this suit, but it seeks voluntary dismissal in lieu of continuing to litigate based on circumstantial evidence. (*Compare* ECF No. 169 at 1 and ECF No. 170 at 4.) The Court finds this explanation entirely reasonable under the circumstances. Furthermore, the Court finds that SmartLinx has shown that dismissal would be in the interest of judicial economy.

Next, as to Zeif's claim that he will suffer unfair prejudice if the Court grants Plaintiff's motion because a voluntary dismissal will preclude him from pursuing a malicious prosecution claim in the future and from recovering attorney's fees as a "prevailing party," the Court finds these claims entirely speculative and insufficient to demonstrate unfair prejudice. Although Zeif *believes* that he would prevail in this matter and would be able to recover attorney's fees, and he *believes* that he would be able to establish additional claims against SmartLinx in the future, the Court agrees with SmartLinx that such conjecture simply does not constitute clear legal prejudice. Stated differently, the Court is unwilling to deny SmartLinx's motion for voluntary dismissal based simply on Zeif's belief that he would ultimately prevail in this action and that he would prevail in additional actions in the future, as the record is far from clear on those points at this time.

(ECF No. 187 at 4-5.)

Following the filing of SmartLinx's motion for voluntary dismissal, the parties again engaged in numerous discovery disputes. (ECF Nos. 178-186, 188-197, 200-201, 205.) The Court held a hearing on the parties' discovery motions on January 25, 2024, ultimately granting in part and denying in part the motions as specifically outlined on the record. (ECF Nos. 208, 211.)

Prior to the resolution of the parties' discovery disputes, Zeif filed two more motions for summary judgment, which are before the Court for disposition. Specifically, on January 11, 2024, Zeif filed a motion for partial summary judgment with respect to his defamation counterclaim against SmartLinx. (ECF No. 198.) And on January 21, 2024, Zeif filed a motion for partial summary judgment as to his counterclaims for tortious interference with prospective contractual relations and conversion. (ECF No. 206.) SmartLinx filed responses in opposition, and Zeif filed replies. (ECF Nos. 213, 215, 219, 220.)

On February 2, 2024, SmartLinx filed a motion for summary judgment as to Zeif's amended counterclaims, and this motion is also before the Court for disposition. (ECF No. 214.) Zeif filed a response in opposition, and SmartLinx filed a reply. (ECF Nos. 223, 228.)

16

In the meantime, the parties also indicated to the Court that no jury demand had been made in connection with Zeif's amended counterclaims; accordingly, the Court canceled its notice of jury selection and scheduled a "potential bench trial" the week of March 25, 2024.  Due to scheduling conflicts, the Court subsequently scheduled a date-certain bench trial for the week of April 15 but moved it to April 10 in light of the parties' additional conflicts.  (ECF Nos. 222, 224-227.)

On March 13, 2024, Zeif filed a "motion for determination of jurisdictional issues in advance of trial," and this motion is also before the Court for disposition.  (ECF No. 231.) SmartLinx filed a response, and Zeif filed a reply.  (ECF Nos. 232, 233.)

Lastly, on March 29, 2024, SmartLinx filed an emergency motion to stay the bench trial currently scheduled for April 10 trial based on Zeif's filing (on March 11, 2024) of another state court action against Aslanyan, SmartLinx, Howard A. Matalon, Esq., and Olender Feldman, LLP, predicated on the same facts as this action.[6]  (ECF No. 238.) SmartLinx states in its motion that it "is not seeking to delay or disrupt the Court's ruling on any pending motions."  (*Id.* at 1.)  On April 1, 2024, Zeif filed a response indicating that he does not oppose SmartLinx's request to stay the bench trial to permit SmartLinx to coordinate insurance coverage related to the other case.  (ECF No. 239.)  This order does not address SmartLinx's motion to stay the bench trial.

## **STANDARD OF REVIEW**

Summary judgment shall be granted "if the pleadings, the discovery and disclosure

---

[6] Zeif filed the most recent state court action in the Court of Common Pleas for the Ninth Judicial Circuit, but the named defendants removed the action to this Court on March 28, 2024.  *See* Civil Action No. 2:24-1558-BHH.

materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Courts view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. *Id.* at 255. "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

## DISCUSSION

### I.     Supplemental Jurisdiction

The Court first addresses Zeif's motion "for determination of jurisdictional issues in advance of trial," wherein he asserts that he first learned on March 11, 2024, that when he filed his amended counterclaims against SmartLinx in April of 2022, SmartLinx was owned by SLX Topco, LLC, a limited liability company whose members included citizens of South

Carolina.  (ECF No. 231 at 2.)  According to Zeif, therefore, complete diversity between the parties did not exist at the time he filed his amended counterclaims.[7]  (*See* ECF No. 35 at 20 ¶ 3 ("This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are diverse and the matter in controversy exceeds $75,000.00.  Jurisdiction is further proper pursuant to 28 U.S.C. [§] 1367 and 28 U.S.C. [§] 2201."[8]).)

Although Zeif admits that the Court's jurisdiction over his counterclaims is based on supplemental jurisdiction, and he further admits that his counterclaims are compulsory, he also notes that § 1367 gives the Court discretion to decline to continue to exercise supplemental jurisdiction in certain circumstances.  (*Id.* at 1-3.)  Zeif then asserts, somewhat confusingly, that he "is not asking the Court [to] decline to continue the exercise of supplemental jurisdiction," but is instead asserting that it would be equitable for the Court to determine whether it will maintain supplemental jurisdiction now.  (*Id.* at 4.)

In response to Zeif's motion, SmartLinx notes that it initiated this action on March 11, 2021, asserting federal causes of action over which this Court had original jurisdiction pursuant to 28 U.S.C. § 1331 and state causes of action over which this Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  SmartLinx also notes that when the Court granted SmartLinx's motion to voluntarily dismiss its claims in January of 2024, the Court remarked that Zeif's remaining state law claims "can remain pending for independent adjudication."  (*See* ECF No. 187 at 4.)  *See also* Fed. R. Civ. P. 41(a)(2) (providing that "[i]f a defendant has pleaded a counterclaim before being served with

---

[7] The Court notes that no party has offered any proof of SmartLinx's citizenship as of April of 2022. (ECF No. 231 at 1-2, 4; ECF No. 232 at 4; ECF No. 233 at 2.)

[8] Zeif now admits that 28 U.S.C. § 2201 does not provide an independent basis for subject matter jurisdiction.  (ECF No. 231 at 1.)

19

plaintiff's motion to dismiss, the action may be dismissed over defendant's objection only if the counterclaim can remain pending for independent adjudication").  Thus, SmartLinx points out that the Court effectively already decided to retain supplemental jurisdiction over Zeif's counterclaims, noting that Zeif's motion apparently recognizes the same, and noting that, since the dismissal of SmartLinx's federal and state law claims, the Court has issued a number of rulings and has scheduled the matter for a bench trial.[9]  Regardless, SmartLinx asserts that the circumstances weigh in favor of the Court continuing to exercise supplemental jurisdiction over Zeif's remaining counterclaims.

In his reply brief, in stark contrast to his statement in his motion that he "is not asking the Court [to] decline to continue the exercise of supplemental jurisdiction," Zeif asserts that his defamation counterclaim involves unsettled issues of state law regarding absolute immunity and that it would be reversible error for this Court to adjudicate Zeif's defamation claim.  (ECF No. 233 at 6.)  Zeif also argues that SmartLinx has "cited no authority supporting its position that this Court should decide the purely state law claims that comprise the Counterclaims."  (*Id.* at 8.)

Importantly, the parties here do not dispute that Zeif's amended counterclaims are compulsory in nature; indeed, the Court finds that they clearly arise out of the same transaction or occurrence that is the subject of SmartLinx's now-dismissed federal and state claims.  Because the counterclaims are compulsory, "it is settled that the district court has ancillary jurisdiction, which is now called supplemental jurisdiction under Section 1367

---

[9] SmartLinx also notes that if Zeif believes the Court's continuing exercise of supplemental jurisdiction is improper, then he should have argued to that effect, pointing out that Zeif cannot raise new arguments for the first time on reply.  (ECF No. 232 at 2 n. 1.)

of Title 28 of the United States Code, to decide [them] even though the plaintiff's claim[s are] dismissed." *Lang v. Mfrs. & Traders Trust Co.*, 274 F.R.D. 175, 184 (D.Md. 2011) (quoting Wright & Miller, Fed. Prac. & P. § 2365 (3d ed. 2008). That being said, Zeif is also correct that the Court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In other words, although the Court previously explained that Zeif's counterclaims "*can* remain pending for independent adjudication" after the voluntary dismissal of SmartLinx's claims, such that the Court's dismissal satisfied Rule 41(a)(2), Zeif is correct that the Court still *may* decline to exercise supplemental jurisdiction. *See Lang*, 274 F.R.D. at 185 (explaining that the court *may* grant the plaintiffs' motion for voluntary dismissal over the defendant's objection "if the counterclaim *can* remain pending for adjudication," even though the court, in its discretion, may (and ultimately did) decline to exercise supplemental jurisdiction over the defendant's counterclaim); *see also Crittendon v. Internat'l Follies, Inc.*, No. 1:18-cv-2185-ELR, 2019 WL 13207626, *3 (N.D. Ga. Sept. 30, 2019) ("Thus, in this case, Defendants' counterclaim could remain pending following dismissal of Plaintiff's claims, but the Court may also choose to decline to exercise supplemental jurisdiction."); *Piedea v. Mentor Graphics Corp.* 979 F. Supp. 1297 (D.Or. 1997).

Here, the Court recognizes that it has discretion to exercise supplemental jurisdiction over Zeif's remaining counterclaims. *See Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir. 1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away.") (emphasis in original). Indeed, "[r]ecent case law has emphasized that trial courts

enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Id.* (citations omitted). In exercising its discretion, courts considers factors such as convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Additionally, district courts should consider "manipulative tactics" as another non-dispositive factor." *Id.* at 350.

Ultimately, the Court finds that convenience and fairness to the parties, along with considerations of judicial economy, weight *heavily* in favor of the Court retaining jurisdiction over Zeif's counterclaims. First, this case has been pending for more than three years, and discovery is now complete. Indeed, the case is swiftly approaching the literal eve of trial. The Court also notes that this action was initially filed in federal court, and the undersigned is extremely familiar with the factual issues and the complicated procedural history. Furthermore, it appears to the Court that declining to exercise supplemental jurisdiction at this time would simply be an exercise in futility (in addition to a complete waste of judicial resources), as SmartLinx notes in its response that diversity jurisdiction currently exists between the parties, such that if Zeif chose to refile this action in state court, SmartLinx would have the ability to remove the action to this Court to begin anew. (*See* ECF No. 232 at 3, n. 2.)

Additionally, the Court notes that the parties each assert that they have incurred no less than one million dollars in attorney's fees and costs so far, and dismissal of Zeif's counterclaims at this time would simply cause needless delay and additional, unnecessary expense to all parties. Furthermore, contrary to Zeif's assertion, the Court finds that Zeif's

claims do not raise novel or complex issues of state law; rather, this case involves straightforward legal issues. Finally, with respect to underlying issues of federal policy and comity, the Court recognizes that Fourth Circuit precedent "evince[s] a strong preference that state law issues be left to state courts," *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 (4th Cir. 2010) (unpublished). However, the Court also notes that Zeif's state law counterclaims, and more particularly his defamation counterclaim, is intertwined with the federal claims asserted by SmartLinx–claims that remained pending in this Court *for years* and were not dismissed until just a few months ago.[10] *Compare id.* (explaining that "[t]he plaintiff voluntarily dismissed her federal claims a mere thirteen days after the case was removed from state court"). Furthermore, in light of the overwhelming considerations of convenience, fairness to the parties, and judicial economy, as outlined above, and in the absence of any other compelling circumstances for declining jurisdiction, the Court exercises its discretion to retain supplemental jurisdiction over Zeif's counterclaims.

## II.     Zeif's Defamation Counterclaim

Both Zeif and SmartLinx seek summary judgment with respect to Zeif's defamation counterclaim (count two of Zeif's amended counterclaims) based on SmartLinx's alleged libelous communications to individuals at IntelyCare and alleged slanderous communications to SmartLinx employees and independent contractors regarding Zeif's misappropriation and termination from SmartLinx. (ECF Nos. 198, 214.)

In his motion, Zeif asserts that his counterclaim for defamation *per se* is based on

---

[10] (*See also* ECF No. 198 at 4, n. 1 (stating that the evidentiary posture of the case is exactly the same as prior to the Court's dismissal of SmartLinx's amended complaint "because the issue of whether Zeif misappropriated the Source Code remains pending") (citing ECF No. 171 at 10).)

SmartLinx's publication of false statements that Zeif misappropriated SmartLinx source code, and Zeif asserts that he only needs to establish that the defamatory statements were published because falsity is presumed, as are malice and damages. According to Zeif, SmartLinx then has the burden to prove the truth of the *per se* defamatory statements.

In Zeif's motion, he identifies the distribution of the IntelyCare letter and the termination letter as instances of libel *per se*, and he points to SmartLinx's answers to interrogatories to identify the following list of people who were told allegedly slanderous statements regarding Zeif's termination: Jim Pirraglia, Orit Kendal, Eugene Tokarev, Anil Chillarige, Alex Zeif, Nick Lukens, Peter Harrison, Jasmeet Singh, Nikhil Tuli, Kiril Nikiforov, Prasanna devi Navaneethan, Rachana Ravi, Facundo Goyena, Terry Jeffcoat, Ram Vemireddy, Ioni Girovich, Mymoon Chodhury, Brandon Taquette, Christie Schwaikert, Warren Taylor, Tracey Gardella, Wanda Rivera, Thomas Jegou, Jankhna Masina, Lyudmila Levin, Marshall Slaybod, Manita Bhardwaj, William Pereira, Chris Keenan, Rob Dauch, Dan LaRoche, and Chris Matthews. (ECF No. 198 at 11 (citing ECF Nos. 133-1 at 3 and 161-1 at 3-4).)

With respect to affirmative defenses, Zeif asserts that neither truth nor qualified privilege was raised in SmartLinx's answer (ECF No. 37), although Zeif admits that SmartLinx's answer included a footnote stating that it was subject to the defenses set forth in SmartLinx's contemporaneous motion for partial dismissal. According to Zeif, however, the motion itself did not include any defenses, while the memorandum mentioned absolute privilege but not qualified privilege. (ECF No. 36-1.) Zeif further asserts that SmartLinx did not assert any of the defenses to defamation with respect to any slanderous statements published by Aslanyan.

24

As to the issue of absolute privilege, Zeif refers to *Crowell v. Herring*, 301 S.C. 424, 329 S.E.2d 464 (Ct. App. 1990), and he asserts that the termination letter and the IntelyCare letter were not "utterances arising out of" a judicial proceeding or "preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relation to it." According to Zeif, SmartLinx admitted that the purpose of the IntelyCare letter was something other than a necessary step toward judicial action, unlike the affidavit that was required to initiate the court martial proceeding in *Crowell*. Furthermore, Zeif asserts that the termination letter "was even more clearly not a necessary and preliminary step to suing IntelyCare or Zeif." (ECF No. 198 at 16.)

Next, Zeif asserts that SmartLinx's alleged circumstantial evidence does not exist, pointing to, *inter alia*, the SmartLinx CEO's testimony that it had no direct evidence that any source code ever left the SmartLinx computer network; the declarations of witnesses who contradict SmartLinx's allegation that no other employee downloaded or copied source code the same way Zeif did; and evidence that no USB device was ever connected to the computer that Zeif used after April 11, 2020, more than nine months before Zeif had any contact with IntelyCare. Zeif further asserts that "[n]one of the 'circumstances' upon which SmartLinx based its circumstantial case are founded in fact and are, therefore, probative of nothing." (ECF No. 198 at 23-24.) Accordingly, Zeif asserts that the Court should find as a matter of law that there is no triable issue of fact as to the truth of SmartLinx's defamatory statements made to IntelyCare and to the other individuals, and Zeif asks the Court to grant partial summary judgment as to SmartLinx's liability for defamation.

In its response to Zeif's motion, SmartLinx contends that Zeif's motion improperly asks the Court to weigh the evidence and make credibility determinations. (ECF No. 213.)

25

SmartLinx further asserts that it has presented ample circumstantial evidence of misappropriation to undermine Zeif's allegations of defamation and that Zeif's assertion that SmartLinx does not possess "direct evidence" of misappropriation is not a basis for granting summary judgment.  SmartLinx further asserts in its response to Zeif's motion and in its cross-motion for summary judgment that its communications to Zeif and various members of IntelyCare's management are subject to an absolute privilege under South Carolina law, citing *Crowell* among other cases.  And SmartLinx asserts that Zeif's allegations of slander lack the requisite specificity to succeed and that they are directly contradicted by record evidence.  Furthermore, according to SmartLinx, the declarations submitted by Zeif in support of his defamation claim are unreliable and contain inadmissible hearsay.

Under South Carolina law, the elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement regardless of special harm or the existence of special harm caused by the publication.  *Fountain v. Reliance Bank*, 398 S.C. 434, 441, 730 S.E.2d 305, 309 (S.C. 2012).  Defamation is classified as either actionable *per se* or not actionable *per se*, and slander, "is actionable *per se* when the defendant's alleged defamatory statements charge the plaintiff with one of five types of acts five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession.  *Id.* (citing *Goodwin v. Kentucky*, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (Ct. App. 2001).  Whether a statement is actionable *per se* is a matter of law for the court to resolve.  *Erickson v. Jones Street Publishers, L.L.C.*, 368 S.C. 444, 465, 629 S.E.2d 653, 664 (2006).

26

Defamation claims are subject to a number of affirmative defenses such as truth, qualified (or conditional) privilege, and absolute privilege. *Boone v. Sunbelt Newspapers, Inc.*, 556 S.E.2d 732, 737 (S.C. Ct. App. 2001) (citation omitted). "An absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." *Crowell*, 392 S.E.2d at 467. "Additionally, a statement is conditionally privileged if the following elements are met: 'good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' *Hughs v. Royal Energy Res., Inc.*, 2020 WL 6689132, *3 (D.S.C. Nov. 12, 2020) (quoting *Manley v. Manley*, 353 S.E.2d 312, 315 (S.C. Ct. App. 1987)).

Here, after consideration of the parties' arguments, the Court first agrees with SmartLinx that many of Zeif's arguments effectively ask the Court to weigh the evidence and make credibility determinations at this time, which is not appropriate at this stage. Furthermore, the Court notes that the fact that SmartLinx does not have "direct evidence" of misappropriation is not dispositive of Zeif's defamation counterclaim. *See*, *e.g. Keystone Transp. Sols., LLC v. Nw. Hardwoods, Inc.*, 2019 WL 1756293, at *5 (W.D. Va. 2019) (explaining that a misappropriation claim is "uniquely factual in nature because it ordinarily involves extensive circumstantial evidence that must be evaluated against the direct evidence often presented by defendants in a trade secrets case"). Ultimately, after a careful review of the evidence of record, the Court finds that genuine disputes of material fact exist regarding Zeif's counterclaim for defamation, whether based on alleged libelous or slanderous communications. Therefore, the Court finds that neither party is entitled to

27

summary judgment on Zeif's defamation counterclaim at this time.

Furthermore, as to SmartLinx's defense of truth, the Court finds that SmartLinx has pointed to ample circumstantial evidence of misappropriation to create a question of fact for the factfinder.[11]  This circumstantial evidence includes, but is not limited to, Zeif's alleged unusual computer and cloud activity at the time of his termination and his alleged download of source code files hours after the termination letter was sent to Zeif, as well as SmartLinx's audit of internet searches performed by Zeif at the time.  Additionally, although the Akerman Report found that no SmartLinx source code was contained in Zeif's Google Drive and Dropbox cloud storage accounts when Akerman downloaded and examined Zeif's accounts, the Court notes that this occurred more than 2.5 years after Zeif's termination.  Thus, Akerman's findings do not establish as a matter of law that SmartLinx code was never misappropriated at some time prior to November 2, 2023.

Next, as to the defense of absolute privilege, the Court finds that SmartLinx sufficiently raised the defense in response to Zeif's defamation counterclaim by specifically filings its answer subject to the defenses raised in its contemporaneous motion for partial dismissal and by specifically referring to the privileged nature of the letters throughout its memorandum in support of its motion for partial dismissal.  Accordingly, the Court does not find that SmartLinx waived the defense of absolute privilege.[12]  Nevertheless, after consideration, the Court finds it appropriate to take the issue of qualified immunity under

---

[11] The Court is not at all persuaded by Zeif that SmartLinx somehow waived the defense of truth, as SmartLinx has always denied Zeif's allegations of defamation in their entirety and has continuously maintained its position that Zeif stole, misappropriated, and/or improperly disclosed SmartLinx's source code.

[12] On the other hand, however, the Court does not find that SmartLinx sufficiently raised the defense of *qualified* privilege in this action prior to the parties' most recent motions.

advisement at this time, and the Court reserves its ruling on whether the termination letter and the IntelyCare letter are absolutely privileged until after the parties have had the opportunity to present all of the evidence pertaining to Zeif's defamation counterclaim. Accordingly, the Court hereby denies the parties' motions for summary judgment with respect to Zeif's defamation counterclaim at this time.

### III. Zeif's Counterclaim for Tortious Interference with Prospective Contractual Relations

The parties have filed cross-motions seeking summary judgment as to Zeif's counterclaim for tortious interference with prospective contractual relations (count three of Zeif's amended counterclaims). (ECF Nos. 206, 214.)

In his motion seeking summary judgment on this claim, Zeif relies on his declaration and asserts that the letter that the IntelyCare letter "represents a purposeful and intentional effort to interfere with Zeif's prospective employment with IntelyCare." (ECF No. 206 at 5.) Zeif also points to the testimony of David Coppins, the CEO of IntelyCare at the time, who testified that SmartLinx's interference was effective and that IntelyCare had no interest in hiring someone who would act against the interest of his former employer. (*Id.* at 6.) According to Zeif, SmartLinx's intentional interference was both for an improper purpose and accomplished by improper means, and he asserts that, as a result of SmartLinx's actions, he was unemployed between February 28, 2021, and April 8, 2021. (*Id.* at 7.) In connection with this claim, Zeif seeks actual damages in the amount of $22,458.67 and punitive damages in an amount to be determined.

In its response to Zeif's motion and in its cross-motion for summary judgment, SmartLinx asserts that Zeif cannot establish the necessary elements to support a claim for

tortious interference with prospective contractual relations.  (ECF No. 214 at 22-28; ECF No. 215 at 16-24.)  SmartLinx points in part to the Fourth Circuit's decision in *BCD LLC v. BMW Mfg. Co., LLC*, 360 F. App'x 428, 436 (4th Cir. 2010), where the court examined the elements of this claim under South Carolina law and remarked that "[a] claim for prospective interference cannot stand where the plaintiff is able to consummate a contract with another party."  *Id.* (citing *Egrets Pointe Townhouses Prop. Owners Ass'n, Inc. v. Fairfield Cmts., Inc.*, 870 F. Supp. 110, 116 (D.S.C. 1994)).

According to SmartLinx, because Zeif was successful in acquiring his expected contract with IntelyCare, he cannot succeed on this claim.  Additionally, SmartLinx asserts that Zeif cannot base his claim on any purported delay in his employment with IntelyCare; that Zeif cannot show that SmartLinx acted with an improper purpose or by improper means; and that Zeif cannot demonstrate that any alleged improper purpose predominated.

After careful review of the record and the applicable law, the Court agrees with SmartLinx that Zeif's counterclaim for tortious interference with prospective relations fails for the simple reason that Zeif was able to form his contract with IntelyCare.  Under South Carolina law, a claim of tortious interference with prospective contractual relations requires a plaintiff to prove that the defendant: (1) intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff.  *Crandall Corp. v. Navistar Intern. Transp. Corp.*, 302 S.C. 265, 266, 395 S.E.2d 179, 180 (S.C. 1990).  Importantly, however, as noted by SmartLinx, "[a] claim for prospective interference cannot stand where the plaintiff is able to consummate a contract with another party."  *BCD LLC*, 360 F. App'x at 436 (citing *Egrets Pointe Townhouses Prop. Owners Ass'n*, 870 F. Supp. at 116.  Furthermore, as the Fourth Circuit

30

has explained, "[u]nder South Carolina law, it is irrelevant that a plaintiff could have realized *a better deal* 'but for' the actions of the defendant because the term 'potential' contractual relations does not mean 'full' contractual relations." *Id.* (emphasis added). Thus, "[a]t the core, a cause of action for interference with prospective contractual relations will thus lie *only* where 'the aggrieved party [was] . . . unsuccessful in acquiring an expected contract due to a third party's intentional and wrongful actions." *Id.* (emphasis added)

Here, it is undisputed that IntelyCare made an offer of employment to Zeif, which he accepted as early as February 23, 2021, before SmartLinx's counsel sent the IntelyCare letter demanding that IntelyCare cease and desist from employing Zeif. Furthermore, it is clear that Zeif was utlimately successful in acquiring a contract with IntelyCare; indeed, he still works there to this day. Thus, even if Zeif was not able to start his employment until April 8 rather than on the original date offered of March 29, the Court agrees with SmartLinx that Zeif's claim still fails because "potential" contractual relations does not mean "full" contractual relations. *Egrets Pointe*, 870 F. Supp. at 116. As the District of South Carolina has noted, "[t]ortious interference claims cannot be predicated on conduct that was a mere 'hindrance' to contract formation." *BCD, LLC v. BMW Mfg. Co., LLC*, No. 6:05-cv-2152-GRA, 2008 WL 304878, *23 (D.S.C. Jan. 31, 2008); *see also Egrets Pointe*, 870 F. Supp. at 116 (noting that "*Crandall* and other authority discussing this tort usually require the aggrieved party to have been unsuccessful in acquiring an expected contract due to a third party's intentional and wrongful actions") (citations omitted).

Ultimately, there is no genuine dispute of material fact that Zeif was successful in acquiring an expected contract with IntelyCare. Therefore, the Court finds no genuine dispute of material fact as to Zeif's counterclaim for tortious interference with prospective

contractual relations, and the Court grants SmartLinx's motion for summary judgment as to this claim without reaching the remaining arguments raised by the parties.[13]

## IV.    Zeif's Conversion Counterclaim

The parties have filed cross-motions as to Zeif's conversion counterclaim (count four of Zeif's amended counterclaims).  (ECF Nos. 206, 214.)

In Zeif's motion, he asserts that it is undisputed that he "had earned a bonus of $20,510.00 for his work at SmartLinx" for work performed in 2020, and that this was his property.  (ECF No. 206 at 9.)  He points to his bank records and SmartLinx's pay records to indicate that SmartLinx deposited $11,372.43 into his account, representing his net bonus after $9,137.57 was deducted for taxes and other items, although he contends that SmartLinx did not properly remit the withheld amount to the taxing authorities.  (*Id.*)  He further asserts that "[t]here was no legal basis by which SmartLinx had any right to 'claw-back' his wages, to access his personal bank account, to remove his money, or fail to remit the funds it withheld for taxes on the bonus."  (*Id.*)  In other words, according to Zeif, SmartLinx converted the funds by withdrawing them from his bank account and by failing to remit the remainder of his bonus withheld for tax purposes.  Zeif admits that he was "able to obtain from the bank a refund of the sums wrongfully withdrawn from his account."  (*Id.*)  Thus, he asserts that his claimed damages "are the $9,137.57 that was withheld by SmartLinx," and he cites S.C. Code § 41-10-80(C) to support his contention his request for three times the amount of unpaid "wages."  (*Id.* at 10-11.)  In all, Zeif requests $27,412.71 in

---

[13] In other words, the Court need not address whether Zeif can show that SmartLinx acted with an improper purpose or by improper means, or whether Zeif can demonstrate that an alleged improper purpose predominated.

actual damages, as well as an award of punitive damages and attorney's fees to be determined, in connection with this claim.  (*Id.* at 11.)

In response to Zeif's motion and in its cross-motion for summary judgment, SmartLinx asserts that Zeif cannot establish a conversion claim under South Carolina law for a number of reasons.  First, SmartLinx objects to Zeif's assertion in paragraph 14 of his declaration that the withheld amount of $9,137.57 was not paid to taxing authorities, arguing that Zeif has no personal knowledge to support this assertion and requesting that the Court strike the allegation.  Second, SmartLinx asserts that Zeif cannot establish any legal right to the withheld tax amount because he cannot prove any legal right to possession of the withheld amount.  Additionally, SmartLinx asserts that even if Zeif had legal right to the withheld tax amount (or to the entire bonus amount for that matter), conversion cannot arise from an alleged obligation to pay disputed wages.  SmartLinx further asserts that Zeif cannot show that he was entitled to any form of bonus in the first place, explaining that the bonus was discretionary.  Also, according to SmartLinx, Zeif cannot establish any damages related to the withheld tax amount because there is no circumstance under which Zeif would have been entitled to receive or otherwise would have been paid the withheld tax amount.  Lastly, SmartLinx notes that Zeif never pleaded a claim for unpaid wages under the South Carolina Payment of Wages Act, and because Zeif has not requested leave to amend his amended counterclaims, SmartLinx asserts that  Zeif's claim for treble damages under the South Carolina Payment of Wages Act is not properly before the Court.

"Conversion is defined as the unauthorized assumption in the exercise of the right to ownership over goods or personal chattels belonging to another to the exclusion of the

33

owner's rights." *Moseley v. Oswald*, 376 S.C. 251, 254, 656 S.E.2d 380, 382 (2008). Pursuant to South Carolina law, "to prove the tort of conversion, the plaintiff must establish either title to or *right* to the possession of the personal property." *Joe Hand Promotions, Inc. v. Pee Dee Benevolent Soc'y, Inc.*, No. 4:11-cv-2022-TLW-TER, 2021 WL 2178706, *6 (D.S.C. March 12, 2012), *report and recommendation adopted*, No. 4:11-cv-2022-TLW-TER, 2023 WL 2178629 (D.S.C. June 13, 2012).

After a thorough review of the evidence of record and the applicable law, the Court finds that SmartLinx is entitled to summary judgment on Zeif's conversion counterclaim for the simple reason that Zeif's bonus was discretionary. As such, Zeif cannot demonstrate that SmartLinx had an *obligation* to pay him the bonus, and conversion applies to money only when "there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff." *Simpson Plastering, LLC v. Skanska/Trident*, 2017 WL 773550, *3 (D.S.C. Feb. 17, 2017). Importantly, Zeif admitted at his deposition that he was "not aware of anything that guarantees" his bonus, and his employment paperwork provides that bonuses are "payable at the discretion of the employer." (ECF No. 215-1 at 12; ECF No. 215-6.) Furthermore, SmartLinx reversed the deposit of the discretionary bonus after terminating Zeif for cause. (ECF No. 206-3 at 9.) Ultimately, because the bonus was discretionary, the Court finds that Zeif has failed to demonstrate that he had any legal *right* to possession of the bonus.

Furthermore, the Court finds that *even if* Zeif could demonstrate that he had a legal right to possession of the bonus (perhaps based on the fact that SmartLinx initially deposited the money in his account before withdrawing it), SmartLinx still would be entitled to summary judgment because Zeif's claim would then be one for the payment of disputed

34

wages.  In fact, Zeif apparently recognizes as much insofar as he admits that his "claim for conversion involves a failure to pay wages due," and he argues that he is entitled to treble damages under the South Carolina Payment of Wages Act.  (ECF No. 220 at 13.) Importantly, however, Zeif cannot maintain an action in tort for conversion based on SmartLinx's failure to pay disputed wages, and Zeif has not otherwise properly pleaded a counterclaim pursuant to the South Carolina Payment of Wages Act.  *See, e.g.*, *Flowers v. Premier V.T.L., LLC*, No. 2:18-1279-RMG, 2018 WL 3014820, *2 (D.S.C. June 15, 2018) (stating that failure to pay wages cannot support a claim for conversion under South Carolina law).  For these reasons, the Court finds no genuine dispute of material fact as to Zeif's conversion counterclaim; thus, the Court grants summary judgment in favor of SmartLinx on this claim.

## CONCLUSION

Based on the foregoing, the Court hereby denies Zeif's motions for partial summary judgment (ECF Nos. 198, 206); the Court grants in part and denies in part SmartLinx's motion for summary judgment (ECF No. 214), granting the motion as to Zeif's counterclaims for tortious interference with prospective contractual relations and conversion but denying the motion as to Zeif's counterclaim for defamation; and the Court grants Zeif's motion for determination of jurisdictional issues in advance of trial (ECF No. 231) insofar as the Court outlines herein the reasons supporting the Court's continuing exercise of supplemental jurisdiction.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

April 2, 2024
Charleston, South Carolina